Filed 10/8/20  P. v. Pardo CA2/1

(unmodified opinion attached)
NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHNNY RAMIREZ PARDO,<br><br>    Defendant and Appellant. | B303150<br><br>(Los Angeles County<br>Super. Ct. No. KA034850)<br><br>ORDER MODIFYING<br>OPINION AND DENYING<br>REHEARING; NO CHANGE<br>IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed on September 30, 2020, be modified as follows:

On page 12, the second full paragraph is deleted in its entirety, beginning with the sentence, "In any case, Pardo's appeal fails on the merits."

There is no change in the judgment.  Appellant's petition for rehearing is denied.

_____

ROTHSCHILD, P. J.          BENDIX, J.          SINANIAN, J.*

_____

    * Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 9/30/20  P. v. Pardo CA2/1 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOHNNY RAMIREZ PARDO,<br><br>Defendant and Appellant. | B303150<br><br>(Los Angeles County<br>Super. Ct. No. KA034850) |

APPEAL from an order of the Superior Court of Los Angeles County, Rogelio G. Delgado, Judge.  Affirmed.

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Wyatt E. Bloomfield, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

In 1998, a jury convicted Johnny Ramirez Pardo of attempted murder, carjacking, and first degree murder, and found true a special circumstance allegation that the murder was committed during the commission of a carjacking.  In 2019, Pardo filed petitions for resentencing relief under Penal Code section 1170.95[1] for his murder and attempted murder convictions.  After reviewing the briefs of the parties, the court file, and the prior appellate opinion (*People v. Pardo* (May 30, 2000, B119940) [nonpub. opn.] (*Pardo*)), the trial court denied Pardo's petitions.

On appeal, Pardo argues the trial court should have proceeded to an evidentiary hearing to determine whether he was a major participant who acted with reckless indifference to human life under *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).  Pardo further argues that contrary to the trial court's ruling, section 1170.95 should apply to attempted murder.  We conclude that neither conviction is eligible for section 1170.95 relief and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1997, "Edgar Leiva was walking in an alley when a car driven by [Marcelo Gabriel] Baeza's wife, Candy, approached him.  Leiva knew the passenger, Pardo, [who was] a paraplegic confined to a wheelchair.  Pardo said he would take Leiva home, and Leiva got in the back seat.  [¶]  . . . They arrived at Baeza's house [and] Candy went into the house.  Shortly thereafter, Baeza came out and got in the car. . . .  Baeza then drove to a house.  Pardo did not answer Leiva's query about what they were doing.  Baeza entered the house and returned with a man named

---

[1] All unspecified statutory references are to the Penal Code.

Robert Ramirez ('Thumper').  Leiva knew Thumper.  The two men had a history of fist fights. . . .  [¶]  Without discussion, Baeza drove to an apartment complex and parked in a carport at the rear. . . .  Thumper got out and told Leiva to fight with him.  Leiva complied, and Thumper, who was much larger, beat him for approximately two minutes. . . .  Thumper returned to the back seat, and Baeza drove out of the carport.  Pardo called Leiva over to the car.  He reached out and pulled off Leiva's shirt.  According to Leiva, four or five gunshots were fired at him from the location where Pardo sat, about five feet away.  Leiva was hit in the right arm, stomach and hip." (*Pardo*, *supra*, B119940.)  Leiva survived.  Pardo told the police Baeza shot Leiva.

"In a videotaped conversation while he was in jail . . . , Baeza and his wife discussed assault weapon possession charges against her.  During a disjointed conversation about her arrest, Baeza, using both arms as if he were propelling himself in a wheelchair, told Candy to contact the mimed person.  Candy replied she had contacted that person, who told her it was her car in which the gun was found and therefore it was her problem.  Candy also said she told one of the people responsible for those charges, '[S]omebody's gonna be real pissed off when he finds out and he goes well he'll understand.  I go I don't think so and don't forget you['re] f---ing with his wife.  He goes no he'll understand why I did it.  I go why'd you do it.  He goes I don't want to [do] life in the pen.  He goes they get me I'm going back for life.'  The Baezas then conclude that the 16-year-old girlfriend of the man with whom Candy had spoken should have confessed to the gun possession." (*Pardo*, *supra*, B119940.)

Evidence was provided at trial that Baeza belonged to the Mexican Mafia; and Pardo and Thumper belonged to local street gangs.

"Six days after the Leiva shooting, Carmelo Gregorio . . . was loading a wheelchair into his car in a convenience store parking lot in Azusa at 6:38 a.m. He was with two girls in their early 20's and a wheelchair-bound man less than 30 years old. The man sat in the car; the girls stood outside. Gregorio looked afraid. Shortly thereafter, all four people and the car left.

"Around 7:15 a.m., gunshots were heard at a West Covina park about five miles from the store. A car sped away. About 45 minutes later, police found Gregorio's body at the park. . . . [¶] Gregorio took 16 gunshot wounds to this head, shoulders, hips, lower back, and buttocks. The locations of his wounds and the shell casings suggested he had been repeatedly shot after leaving his car. The next day, a newspaper published a front-page article about the shooting. While at Baeza's house, Pardo's girlfriend overheard Pardo say he had shot a man and that the shooting had made headlines.

"During his taped police interview, . . . [Pardo] said he was asked to 'lure[ ]' Gregorio from the convenience store. Using his disability as his reason for asking for a ride, Pardo had Gregorio drive to where Baeza and Thumper were waiting. When they arrived, Baeza and Thumper 'just rolled up on [Gregorio] . . . [a]nd [Gregorio] . . . cooperated with them . . . at gunpoint. I did what I had to do, and I was gone. And they went their way.' Several times, Pardo suggested that Baeza shot Gregorio for Gregorio's car." (*Pardo*, *supra*, B119940, fn. omitted.)

According to the third amended information, Pardo was charged with Gregorio's murder and carjacking. The third

amended information also alleged that Gregorio was murdered during the commission of a carjacking within the meaning of the special circumstance statute, section 190.2, subdivision (a)(17). Neither Baeza nor Ramirez was charged with these crimes. Pardo, Baeza, and Ramirez were charged with Leiva's attempted murder.

During closing argument, the People stated that "the special circumstance is true if either during [the] carjacking Mr. Pardo was himself the shooter and intended to kill, or he played a major role in the carjacking." The trial court instructed the jury that in order to find true the special circumstance, it must find that Pardo was the actual killer; with the intent to kill, aided and abetted in the commission of first degree murder; or was a major participant in the carjacking who acted with reckless indifference to human life.[2]

A jury convicted Pardo of attempted murder, murder in the first degree, and carjacking. The jury also found true the special circumstance allegation that the murder was committed during the commission of a carjacking. The record does not reveal under which theory the jury found the special circumstance allegation to be true. The jury also found the allegation that Pardo used a firearm during the commission of Gregorio's murder was not true. Pardo admitted certain prior convictions, and the trial court sentenced Pardo to a total of two life terms without the possibility of parole plus 25 years.

---

[2] We have before us only a portion of the closing argument and jury instructions, which Pardo attached to his section 1170.95 petition.

On direct appeal, Pardo challenged his conviction on several grounds, including that substantial evidence did not support the special circumstance finding "that he intended to kill Gregorio or aided and abetted the carjacking by being a major participant, while acting with reckless indifference to human life."

This court determined that "[t]he fact that the jury [did not find true] the personal firearm use allegation . . . does not mean, as Pardo contends, the jury found he was not the actual killer. There are any number of reasons a jury might have [made] its not-true finding, none of which compels the conclusion that the jury found Pardo was not the shooter. . . . [¶] In any event, the jury could reasonably have found Pardo guilty on aiding and abetting grounds with the intent to kill or as a major participant with reckless indifference to human life. Pardo lured Gregorio to the spot where he was killed. Baeza wanted the car and was a killer. Having delivered Gregorio and his car, Pardo simply left, as he told it. He did not try to help Gregorio. Six days earlier, Pardo, Baeza and Thumper tried to kill Leiva with a gun. Thus, there was ample evidence from which the jury could conclude that Pardo was an active participant in the carjacking with reckless indifference to human life."[3] (*Pardo, supra*, B119940.) We affirmed Pardo's conviction and remanded to the trial court

---

[3] On direct appeal, Pardo also argued there was not substantial evidence that he knew Baeza was going to commit a carjacking and could not be convicted as an aider and abettor in the murder committed by Baeza. We determined "[t]he jury could reasonably have concluded from such evidence that Pardo had the requisite knowledge to be guilty of aiding and abetting the carjacking." (*Pardo, supra*, B119940.)

6

only for the trial court to amend Pardo's abstract of judgment to reflect the $200 restitution fine imposed on Pardo.

In 2015 and 2016, the California Supreme Court clarified under what circumstances a defendant could be deemed a major participant in an underlying felony who acted with reckless indifference to human life in *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522. Then, in 2018, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), which, among other things, enacted section 1170.95 to permit resentencing in certain circumstances of persons convicted under the felony-murder rule. (§ 1170.95, subd. (a).)

On January 28, 2019, Pardo petitioned the trial court for resentencing relief relating to his murder conviction pursuant to section 1170.95. According to documents filed by the prosecution, the trial court requested the prosecution provide an informal response to Pardo's petition. Prior to the prosecution filing its response, Pardo, via his court-appointed counsel, filed a supplemental petition in which he also sought resentencing for his attempted murder conviction. The prosecution filed its response, and Pardo filed his reply.

At a December 4, 2019 hearing, the parties submitted on their papers. The trial court denied resentencing relating to Pardo's conviction for murder on the basis that "the appellate opinion affirming the petitioner's conviction [and] sentence reflects that the defendant was a major participant who aided with reckless indifference to human life." The trial court also denied Pardo's request to resentence him for the attempted murder conviction because "attempted murder is not covered by this law."

Pardo timely appeals the trial court's denial of his section 1170.95 petitions.

## DISCUSSION

### A. Senate Bill 1437 Modifies Accomplice Liability for Murder

The Legislature passed Senate Bill 1437 "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see § 189, subd. (e).) Accordingly, Senate Bill 1437 amended sections 188 and 189 to limit the natural and probable causes doctrine and the felony murder rule. (See §§ 188, 189, subd. (e).)

Senate Bill 1437 also enacted section 1170.95. Under subdivision (a) of section 1170.95, a person convicted of first or second degree murder may petition a trial court for resentencing "when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) *The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.*" (*Ibid.*, italics added.)

8

If a petitioner makes a prima facie showing that he or she falls within the provisions of subdivision (a) of section 1170.95, the trial court must then appoint counsel and order briefing to determine whether petitioner has made a prima facie showing that he or she is entitled to relief. (*Id.*, subd. (c); *People v. Verdugo* (2020) 44 Cal.App.5th 320, 332, review granted Mar. 18, 2020, S260493 [concluding under subd. (c) of § 1170.95, petitioner must demonstrate two prima facie showings]; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1139-1140, review granted Mar. 18, 2020, S260598 [holding § 1170.95, subd. (c) does not require appointment of counsel "until the court makes the threshold determination that petitioner 'falls within the provisions' of the statute"].) If the petitioner satisfies both steps of making a prima facie showing, then the trial court must issue an order to show cause why resentencing relief should not be granted. (§ 1170.95, subd. (c); *Verdugo, supra*, at pp. 328-329.) "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. . . ." (§ 1170.95, subd. (d)(3).)

## B. The Trial Court Did Not Err in Denying Pardo's Petitions

### 1. *Section 1170.95 Does Not Apply to Attempted Murder*

Pardo argues section 1170.95 resentencing relief should extend to his conviction for attempted murder. In particular, Pardo argues statutory remedial benefits should extend to lesser included offenses and excluding attempted murder from the operation of section 1170.95 raises equal protection concerns.

Appellate courts have already considered and rejected those arguments. (See, e.g., *People v. Alaybue* (2020) 51

9

Cal.App.5th 207, 222 [holding § 1170.95 does not apply to attempted murder and finding that declining to apply the statute to attempted murder does not produce absurd results]; *People v. Medrano* (2019) 42 Cal.App.5th 1001, 1016-1018, review granted Mar. 11, 2020, S259948 [finding § 1170.95 does not apply to attempted murder]; *People v. Larios* (2019) 42 Cal.App.5th 956, 970, review granted Feb. 26, 2020, S259983 [finding § 1170.95 does not apply to attempted murder]; *People v. Munoz* (2019) 39 Cal.App.5th 738, 754, review granted Nov. 26, 2019, S258234 [rejecting arguments that not extending Senate Bill 1437 to attempted murder violates equal protection and produces absurd results, or that because attempted murder is a lesser included offense of murder, § 1170.95 should apply to attempted murder convictions]; *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1104-1105, review granted Nov. 13, 2019, S258175 [holding not extending Senate Bill 1437 to attempted murder does not violate equal protection].)[4]

Indeed, Pardo acknowledges that no appellate court has found that section 1170.95 applies to attempted murder. The trial court properly concluded Pardo's sentence for attempted murder was ineligible for relief under section 1170.95 as a matter of law.

2. *Pardo's Sentence for Murder is Not Eligible for Section 1170.95 Relief as a Matter of Law*

---

[4] We recognize that our Supreme Court has granted review as to whether Senate Bill 1437 extends to attempted murder based on a natural and probable consequences theory. (See *People v. Lopez* (2019) 451 P.3d 777.) However, Pardo does not make any arguments that persuade us to depart from the holdings of these opinions.

Pardo argues that consistent with the appellate opinion in *People v. Torres* (2020) 46 Cal.App.5th 1168, review granted June 24, 2020, S262011, we should remand and order the trial court to hold an evidentiary hearing as to whether Pardo was a major participant in the carjacking who acted with reckless indifference to human life. Pardo contends *Torres* holds that a special circumstance finding made prior to *Banks* and *Clark* does not support the trial court's conclusion that Pardo is ineligible for section 1170.95 relief as a matter of law.

We disagree with *Torres*'s construction of section 1170.95 in this regard. (See *People v. Galvan* (2020) 52 Cal.App.5th 1134.) As we recently held in *Galvan*, "the proper remedy for challenging a special circumstance finding is by a petition for habeas corpus, not a petition for resentencing under section 1170.95." (*Id.* at p. 1137; *People v. Gomez* (2020) 52 Cal.App.5th 1, 17.)[5]

Pardo cannot make the initial prima facie showing required under section 1170.95, subdivision (a)(3) that he now *could not* be convicted of first or second degree murder because of the changes to section 188 or 189. A defendant may still be convicted of felony murder under amended section 189, subdivision (e) if "(1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted

---

[5] Pardo has brought to our attention Division Five's recent opinion, *People v. York* (Sept. 3, 2020, B298635) ___ Cal.App.5th ___ [2020 WL 5249362]. The People have also brought to our attention our recent opinion, *People v. Murillo* (Sept. 1, 2020, B297546) ___ Cal.App.5th ___ [2020 WL 5201302]. We will follow *Murillo*.

the actual killer in the commission of murder in the first degree. [¶] (3) *The person was a major participant in the underlying felony and acted with reckless indifference to human life*, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e), italics added.)

Thus, Pardo's petition does not depend on Senate Bill 1437's changes to the felony-murder rule. Rather, as in *Galvan*, Pardo's petition depends on "the clarification of the requirements for the special circumstance finding in *Banks* and *Clark*." (*People v. Galvan*, *supra*, 52 Cal.App.5th at p. 1142.) Because the proper vehicle for such a challenge is a petition for writ of habeas corpus, the trial court did not err in summarily denying Pardo's petition. (See *id*. at pp. 1137, 1142.)

In any case, Pardo's appeal fails on the merits. The court's opinion in the direct appeal concluded that there was sufficient evidence that he aided and abetted the murder with the intent to kill. Thus, under *People v. Lewis*, *supra*, 43 Cal.App.5th at pp. 1137-1139 and *People v. Verdugo*, *supra*, 44 Cal.App.5th at p. 333, he would not be able to make a prima facia showing for relief.

## DISPOSITION

The December 4, 2019 order denying Pardo's petition is affirmed.

NOT TO BE PUBLISHED


SINANIAN, J.*


We concur:


ROTHSCHILD, P. J.


BENDIX, J.

---

    * Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.