Filed 12/1/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CEDRICK CONWAY, | B325986 |
| Petitioner, | (Los Angeles County Super. Ct. No. ZM022558) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate. William C. Ryan, Judge. Petition granted.

Ricardo D. Garcia, Public Defender of Los Angeles County, Albert J. Menaster, Head Deputy Public Defender, Alvin Thomas and Lara Kislinger, Public Defenders, for Petitioner.

No appearance for Respondent.

George Gascón, District Attorney of Los Angeles County, Felicia Shu and Cassandra Thorp, Deputy District Attorneys, for Real Party in Interest.

Petitioner Cedrick Conway (Conway) is awaiting trial on a petition to commit him as a sexually violent predator (SVP) pursuant to the Sexually Violent Predator Act (SVPA) (Welf. & Inst. Code, § 6600 et seq.).[1]  In preparation for trial, he filed a motion to obtain a court order directing a Department of State Hospitals (DSH) evaluator to update his previous evaluation, which was completed several years earlier and concluded Conway did not meet the criteria for commitment as an SVP.  The trial court denied the request solely because it believed the pertinent statute allows only the People (as the party seeking commitment) to request an updated evaluation—not the defense.  In this proceeding challenging the trial court's ruling, we consider whether that is indeed what the Legislature intended in enacting the statute or if, instead, the defense can obtain an updated DSH evaluation when a trial court approves.

## I.  BACKGROUND

### A.  *The SVP Commitment Petition and the Initial Defense Request for an Updated Evaluation*

In February 2014, the People filed a petition to commit Conway as an SVP.  With the petition, the People presented multiple evaluations written by DSH doctors.[2]

---

[1]    Undesignated statutory references that follow are to the Welfare and Institutions Code.

[2]    Section 6601 authorizes the People, when seeking commitment of a person as an SVP, to obtain two evaluations of

2

The first two evaluations of Conway reached opposing conclusions. One concluded that Conway met the criteria for commitment as an SVP, while the second, completed by Dr. J. Kyle Van Gaasbeek, concluded he did not. The People accordingly filed two subsequent reports from two other DSH evaluators, both of whom concluded Conway met the SVP criteria.

Four years later, in June 2018, the trial court granted an ex parte application from the defense seeking an order directing Dr. Van Gaasbeek to update his evaluation. Dr. Van Gaasbeek completed that updated evaluation of Conway two months later and concluded he still did not meet the criteria for commitment as an SVP.

B. *The Challenged Ruling: The Trial Court's Denial of Conway's Second Request for an Updated Evaluation*

Three years after granting the defense request for an updated evaluation from Dr. Van Gaasbeek, the trial court reversed course. In November 2022, Conway filed another motion for an order authorizing and instructing Dr. Van Gaasbeek to update his previous SVP evaluation. With the motion was a declaration from Conway's attorney that averred "Dr. Van Gaasbeek, as a full-time employee of [DSH], will not

the person by mental health professionals designated by DSH. (§ 6601, subd. (d).) If the initial two professionals disagree as to whether the person meets the SVP criteria, then two additional "independent professionals" are designated to conduct their own evaluations of the person. (§ 6601, subd. (e).) If those two evaluators agree the individual meets the SVP criteria, a petition to request commitment may be filed. (§ 6601, subd. (f).)

3

prepare an updated report absent a request by his employer." Conway's attorney also declared DSH "has no objection to requesting that Dr. Van Gaasbeek prepare the report, but merely requests an order from this court to do so."

For reasons the record does not reveal, the People opposed the motion for an updated evaluation. The People argued the statutory scheme governing SVP evaluations permits only the People, not the defense, to obtain an updated evaluation from a DSH professional that previously examined someone who is the subject of an SVP commitment petition. In the People's view, this result was required under the plain meaning of the pertinent statute, section 6603: "If the attorney petitioning for commitment under this article determines that updated evaluations are necessary in order to properly present the case for commitment, the attorney may request [DSH] to perform updated evaluations. . . . When a request is made for updated or replacement evaluations, [DSH] shall perform the requested evaluations and forward them to the petitioning attorney and to the counsel for the person subject to this article. However, updated or replacement evaluations shall not be performed except as necessary to update one or more of the original evaluations or to replace the evaluation of an evaluator who is no longer available to testify for the petitioner in court proceedings. These updated or replacement evaluations shall include review of available medical and psychological records, including treatment records, consultation with current treating clinicians, and interviews of the person being evaluated, either voluntarily or by court order." (§ 6603, subd. (d)(1).) The People also emphasized the statutory scheme permits the defense to retain their own experts for trial.

Submitted with the People's opposition to the defense request for an updated evaluation was a declaration from Dr. James Rokop, a Chief Psychologist at DSH and supervisor of the Forensic Services Division's SVP evaluations. Dr. Rokop stated DSH has required a court order to complete a defense request for an updated evaluation because no statutory provision authorizes an informal request for one. He also stated it would be a conflict of interest for "a DSH contractor to be employed separately by the defense or the prosecution if they are also assigned by DSH to the same case."

After holding a hearing and considering argument from both sides, the trial court denied the defense motion for an updated evaluation. Focusing on the aforementioned language in section 6603 that expressly mentions only "the attorney petitioning for commitment" in the context of requesting updated evaluations "to properly present the case for commitment," the trial court accepted the People's position that under "the plain language of the statute" it had no discretion to grant a defense request for an updated evaluation from Dr. Van Gaasbeek.

Conway thereafter petitioned for mandate relief in this court, and we issued an order to show cause.

## II. DISCUSSION

We hold the trial court incorrectly concluded the plain meaning of the SVPA leaves the court with no discretion to grant a defense request for an updated evaluation from Dr. Van Gaasbeek. Section 6603 requires DSH to prepare an updated evaluation upon mere request by the People (if necessary to properly present the case for commitment), but nothing in the statute precludes the defense from obtaining an updated

5

evaluation pursuant to a court order. Particularly when the People appropriately concede nothing prevents the defense from subpoenaing Dr. Van Gaasbeek to testify as an expert at trial (and to ask him to review potentially voluminous records while testifying to ensure his opinion testimony is based on currently available information), there is no sensible policy or practical reason why the Legislature would have meant to preclude the defense from seeking court authorization for an updated evaluation. We reject, however, the defense suggestion that the People were not entitled to oppose the defense motion for an updated evaluation in the trial court. The trial court has discretion to decide whether to receive opposition from the People.[3]

### A. The SVPA and the Standard of Review

The SVPA defines "[s]exually violent predator" as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).) "The SVPA does not

---

[3] Updated DSH evaluations requested by the People are required to be disclosed to counsel to both sides in an SVP proceeding. (§ 6603, subd. (d)(1).) At oral argument, counsel for defendant was unprepared to state whether this same disclosure rule should apply to a court-authorized updated evaluation requested by the defense. We need not opine on the question of disclosure to resolve the matter presently before us; the trial court can set the terms of disclosure when deciding whether to grant the defense request for an updated evaluation.

6

establish a deadline by which a trial on an SVP petition must be held," so it can be years before trial takes place. (*People v. Superior Court (Vasquez)* (2018) 27 Cal.App.5th 36, 57, disapproved on another ground in *Camacho v. Superior Court* (2023) 15 Cal.5th 354, 392, fn. 8.)

Because a currently diagnosed mental disorder is required for commitment, "the People are entitled to obtain updated evaluations of the alleged SVP when existing evaluations have become 'stale.'" (*People v. DeCasas* (2020) 54 Cal.App.5th 785, 802, disapproved on another ground in *Camacho v. Superior Court, supra,* 15 Cal.5th at 392, fn. 8.) In a provision we have already quoted, the SVPA provides "the attorney petitioning for commitment under this article . . . may request [DSH] to perform updated evaluations. . . . However, updated or replacement evaluations shall not be performed except as necessary to update one or more of the original evaluations or to replace the evaluation of an evaluator who is no longer available to testify for the petitioner in court proceedings." (§ 6603, subd. (d)(1).) At the same time, section 6603 also clarifies it "does not prevent the defense from presenting otherwise relevant and admissible evidence" (§ 6603, subd. (e)), and a related provision states the defense is "entitled to a trial by jury, to the assistance of counsel, to the right to retain experts or professional persons to perform an examination on the person's behalf, and to have access to all relevant medical and psychological records and reports." (§ 6603, subd. (a).)

"The standard of review generally applicable to review of discovery orders is abuse of discretion, as management of discovery lies within the sound discretion of the trial court." (*Britts v. Superior Court* (2006) 145 Cal.App.4th 1112, 1123.)

7

"Statutory interpretation involves purely legal questions to which we apply the independent standard of review.  [Citation.]  Thus, 'where the propriety of a discovery order turns on statutory interpretation, an appellate court may determine the issue de novo as a question of law.  [Citation.]'  [Citation.]"  (*Haniff v. Superior Court* (2017) 9 Cal.App.5th 191, 198.)

> B.   *Section 6603 Does Not Prohibit a Court from Authorizing an Updated Evaluation for the Defense*

Section 6603 does not plainly prohibit the defense from obtaining an updated DSH evaluation.  It does authorize only the People to obtain such an update upon request, but here, the defense was not seeking an updated evaluation of Conway upon the defense's mere request of DSH.  Instead, the defense sought a court order authorizing such an update, and nothing in the statute prohibits proceeding in that fashion.

The best the People muster to argue the contrary is the contention that the maxim *expressio unius est exclusio alterius* (often translated as the expression of one thing ordinarily implies the exclusion of other things (*In re J.W.* (2002) 29 Cal.4th 200, 209)) precludes a court from granting a defense request for an updated evaluation.  There are two problems with this.

First, it is not an apples-to-apples comparison; section 6603 does not give only one side the right to obtain an updated, court-authorized evaluation because the statute permits the People to obtain an update simply upon request (if necessary to properly present the case for commitment) and without court approval.  The Legislature therefore has not expressed any intention about who may or may not obtain an update if authorized by a court.  Indeed, if anything, the Legislature has preserved the defense's

8

ability to pursue the procedure Conway pursued here with its statement in subdivision (e) that the statutory scheme "does not prevent the defense from presenting otherwise relevant and admissible evidence."

Second, e*xpressio unius est exclusio alterius* "is not applied in isolation, without regard to 'legislative history or other evidence of legislative intent,' but rather must be considered with regard to 'other indicia of legislative intent.' [Citation.]" (*People v. Alaybue* (2020) 51 Cal.App.5th 207, 218.) The SVPA's provision addressing updated evaluations was added pursuant to Senate Bill No. 2018 (1999-2000 Reg. Sess.). Senate Bill No. 2018 was introduced in response to court decisions holding that confidentiality concerns prevented the People from accessing information about an alleged SVP's current mental health condition. (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 2018 (1999-2000 Reg. Sess.) as amended May 1, 2000, pp. 6-7; *Albertson v. Superior Court* (2001) 25 Cal.4th 796, 805.) A bill analysis prepared for the Senate Health and Human Services Committee stated: "According to the sponsor, S.B. 2018 is intended to enable the district attorney to obtain current mental health evaluations in order to facilitate court actions in the sexually violent predator commitment process. Occasionally, there is a substantial length of time between an evaluation of the person and the actual commitment hearing, sometimes resulting in either defense objections that the evaluations are outdated or one of the two evaluators becoming unavailable." (Sen. Com. on Health and Human Services, Analysis of Sen. Bill No. 2018, (1999-2000 Reg. Sess.) as introduced Feb. 25, 2000, pp. 4-5.) The legislative history establishes the creation of the People's statutory entitlement to updated evaluations was intended

merely to enable the People to access information about a suspected SVP's current mental health condition, not to in any way limit the defense's access to discovery.

We believe, in other words, that section 6603 does not alter the ordinary rules giving a trial court discretion to decide what is, at bottom, a discovery request. A trial court tasked with ruling on a request from the defense for an updated evaluation should be guided both by what is appropriate for the case at hand and the Civil Discovery Act, which applies in SVPA commitment proceedings.[4] (*People v. Superior Court (Cheek)* (2001) 94 Cal.App.4th 980, 987-988.)

---

[4] Code of Civil Procedure Section 2017.010 provides that "[u]nless otherwise limited by order of the court . . . any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action or to the determination of any motion made in that action, if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." Generally, civil litigants are entitled, upon good cause shown, to obtain a mental examination of a party where the party's mental condition "is in controversy in the action." (Code Civ. Proc., §§ 2032.020, subd. (a), 2032.320, subd. (a).)

"[I]n managing discovery in SVPA proceedings, the trial court must keep in mind both the narrow scope of permissible discovery and the need for expeditious adjudication." (*People v. Superior Court (Cheek)* (2001) 94 Cal.App.4th 980, 991.) Evidence "within the permissible scope of discovery in SVPA proceedings" includes information relating to the proof of two issues: "(1) whether the person sought to be committed 'has been convicted of a sexually violent offense against two or more victims' [citation]; and (2) whether the person 'has a diagnosed mental disorder that makes the person a danger to the health

The result we reach makes good practical sense and is consistent with the legislative intention to reduce administrative costs and burdens in the SVP evaluation process. If the defense were forced to seek court authorization to retain (and, most often, pay with public funds) an expert with no prior familiarity with Conway and his earlier medical records, the cost and burden would necessarily be greater than a request to have Dr. Van Gaasbeek update the work he has already done. Similarly, the People concede that the defense could subpoena Dr. Van Gaasbeek to testify at trial and render an opinion, and the idea that the trial proceedings should be prolonged or delayed to permit the defense to ask Dr. Van Gaasbeek to review what he could review in advance of trial makes so little sense that it cannot be what the Legislature intended.

C. *The People May Oppose Requests for Third Party Discovery and the Trial Court May Consider the People's Arguments*

Conway argues that the People did not have standing to object to his request for an updated evaluation because the People are not authorized to represent DSH and have no "legitimate interest" in a proceeding to obtain third party discovery.

---

and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.' [Citation.]" (*Id.* at 989-990.) To ensure that the updated evaluation is within the proper scope of the SVPA commitment proceedings, trial courts can implement the Civil Discovery Act's procedures for management of discovery. (*Id.* at 991; Code Civ. Proc., § 2019.030.)

To the contrary, our Supreme Court has held that "a trial court may entertain argument from the opposing party on third party discovery and that a prosecutor's submission of argument in such a matter . . . is not improper." (*People v. Nieves* (2021) 11 Cal.5th 404, 433.) The People's submission of argument "does not amount to the representation of third party interests." (*People v. Superior Court (Humberto S.)* (2008) 43 Cal.4th 737, 752.)

Further, the People do not need to present a "legitimate interest" in third party discovery proceedings to be able to submit an opposition. The case Conway cites in support of his argument, *Alford v. Superior Court* (2003) 29 Cal.4th 1033, considered the legitimacy of the People's interest when deciding whether the People have a due process right to participate in and receive information shared during *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 discovery proceedings. (*Alford, supra,* at 1045.) The People's due process right to participate in third party discovery proceedings is not at issue in this case. The trial court is permitted "to entertain argument from the prosecution on third party discovery issues" without first weighing the People's interest in the proceedings. (*Humberto S., supra,* 43 Cal.4th at 750.)

12

DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to vacate its November 28, 2022, order denying Conway's motion seeking an updated evaluation from Dr. Van Gaasbeek and to reconsider the matter in view of its discretion to permit the defense to obtain an updated evaluation.

**CERTIFIED FOR PUBLICATION**

BAKER, Acting P. J.

We concur:

MOOR, J.

KIM, J.